```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                      :
ESI CASES AND ACCESSORIES, INC.,                      :
                                                      :
                            Plaintiff,                :      18-CV-11507 (JMF)
                                                      :
              -v-                                     :      OPINION AND ORDER
                                                      :
HOME DEPOT PRODUCT AUTHORITY, LLC,                    :
                                                      :
                            Defendant.                :
                                                      :
----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff ESI Cases and Accessories, Inc. ("ESI") sues Defendant Home Depot Product Authority, LLC ("Home Depot") for breach of contract, promissory estoppel, unjust enrichment, and fraudulent concealment. ESI alleges that it sold mobile phone accessories to Home Depot pursuant to various agreements between the two and that Home Depot now refuses to accept or pay for the accessories. Home Depot moves to transfer this case to the United States District Court for the Northern District of Georgia or, alternatively, to dismiss the Amended Complaint. For the reasons that follow, the motion to transfer is granted with respect to one claim and denied with respect to the rest. The motion to dismiss is likewise granted in part and denied in part.

## BACKGROUND[1]

Plaintiff ESI is a New York-based "mobile electronics manufacturer." ECF No. 12 ("Compl."), ¶ 10. Home Depot is an Atlanta, Georgia-based "nationwide retailer." *Id.* ¶ 11. In

---

[1]   Except where noted, the following facts are drawn from the Amended Complaint and assumed to be true for purposes of Defendant's motion to dismiss. *See Force v. Facebook, Inc.*, — F.3d —, No. 18-397, 2019 WL 3432818, at *1 (2d Cir. July 31, 2019). Although the Court could arguably consider the "Supplier Buying Agreement" filed by Home Depot as a document

February 2017, the parties entered into a "Supplier Buying Agreement."  *See* ECF No. 25-1 ("SBA").  The SBA consists of "General Terms and Conditions," which appear to be a template contract used by Home Depot, *id.* at 8-12, and a "Summary of Business Terms," which contains information specific to ESI, *id.* at 1-7.  The "General Terms and Conditions" section includes a forum-selection clause, which provides that if Home Depot elects not to pursue arbitration to resolve a dispute between the parties, "the parties agree that any civil action to decide such dispute shall be brought in either the US District Court for the Northern District of Georgia, Atlanta Division, or the Fulton Superior Business Court, Georgia."  *Id.* at 9, § 6.5.

According to ESI, in May 2017, the parties entered into a new agreement (the "Manufacturer Agreement").  Compl. ¶ 14.  Pursuant to the new agreement, ESI would "specifically manufacture[] and sell to Home Depot various custom made cell phone accessories bearing the Home Depot trademark."  *Id.*  This contract and its terms were "memorialized though numerous emails, and attachments to emails, between the parties."  *Id.*

Before the Manufacturer Agreement, ESI had supplied Home Depot with only non-custom-made goods, so the Manufacturer Agreement represented a change in the parties' relationship.  *Id.* ¶¶ 15-16.  In manufacturing the custom products for Home Depot, ESI engaged in a costly "on boarding" process, followed Home Depot's "rigid manufacturing standards," and met all of Home Depot's manufacturing deadlines.  *Id.* ¶¶ 17-18.  By January 2018, ESI had manufactured about $1.8 million in custom-made products for Home Depot in reliance on the Manufacturer Agreement.  *Id.* ¶ 19.  Home Depot, however, refused to buy them as agreed.  *Id.* ¶ 20.  Instead, Home Depot offered to pay for only "a portion" of the products, and only at a

---

integral to the Amended Complaint, out of an abundance of caution it is considered only in relation to Home Depot's motion to transfer.

"50% discount." *Id.* ¶ 21.  In addition, Home Depot refused to pay ESI for roughly $65,000 worth of non-custom-made goods that ESI had supplied pursuant to other contracts (the "WG Contracts") between approximately May and December 2017, and which Home Depot had accepted without objection.  *Id.* ¶¶ 26-29.

## MOTION TO TRANSFER

As an initial matter, Home Depot moves to transfer this action to the Northern District of Georgia based upon the forum-selection clause in the SBA.  The federal change-of-venue statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).[2] Generally, courts consider a number of factors in exercising their discretion to grant or deny a motion under Section 1404(a), including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted).  "But 'the calculus changes when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at *4 (S.D.N.Y. Jan. 23, 2019) (quoting *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)) (alterations and ellipsis omitted).  "That is, a valid

---

[2]   No party disputes that, because Home Depot's principal place of business is Atlanta, Compl. ¶ 11, the Northern District of Georgia is a "district . . . where [the action] might have been brought."  *See* 28 U.S.C. § 1391(b).

3

forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks omitted). That is true, however, only if "the claims and parties to the dispute are subject to the [forum-selection] clause." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (per curiam); *accord Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). The party seeking transfer — here, Home Depot — bears the burden of demonstrating that transfer is appropriate. *See N.Y. Marine*, 599 F.3d at 114.

Applying those factors here is complicated by the fact that ESI's claims arise under two different sets of purported agreements: the Manufacturer Agreement and the WG Contracts. The Court will address each set of claims separately. *See, e.g.*, *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997) (remanding to the district court for claim-by-claim factfinding on a motion to transfer where claims arose from several related agreements, only some of which may have contained forum-selection clauses).

**A. Manufacturer Agreement Claims**

Home Depot points to two provisions of the SBA that purportedly demonstrate that ESI's claims under the Manufacturer Agreement are encompassed by the SBA's forum-selection clause. Neither does. First, the SBA provides that the parties' "entire business relationship as to the subject matter herein . . . is subject to this SBA" and, by extension, its forum-selection clause. SBA at 8, § 1.2. If not qualified, the phrase "entire business relationship" might well encompass any claims, on any subject, that ESI could bring against Home Depot. But here, the phrase is qualified by the words that follow — "*as to the subject matter herein*," SBA at 8, § 1.2 (emphasis added) — which serve to limit the scope of that provision to the parties' relationship

4

arising out of the subject matter of the SBA and only the SBA.[3]  The problem for Home Depot is that the SBA provides little insight into what the "subject matter" of the contract is.  The Summary of Business Terms — the vendor-specific component of the SBA — contains terms relating to payment and shipping, along with the parties' contact information, but it says no more about the "subject matter" of the SBA than does the section containing boilerplate contract terms.  *See id.* at 1-7.  At most, the Summary indicates, without elaboration and seemingly as a descriptive matter, that ESI is a business that provides "Goods."  *Id.* at 1.[4]  In fact, if anything, other language in the SBA — governing returns — suggests that "the subject matter" of the contract does not encompass the manufacture of custom-made items, as it indicates that ESI does *not* "sell special order product."  *Id.* at 6.  The bottom line is that absent *any* evidence that the "subject matter" of the SBA encompasses the manufacture of custom-made goods, the Court cannot conclude that Home Depot has carried its burden to show that ESI's claims relating to the alleged Manufacturer Agreement fall within the scope of the SBA and its forum-selection clause.

---

[3]     On top of that, per its own terms, the SBA does not encompass the "entire business relationship" between the parties.  Section 14.12, for example, provides that prior written agreements "regarding the relationship between Home Depot and Supplier" are not superseded by the SBA and "shall continue in full force and effect as written."  SBA at 12.  Meanwhile, Section 14.13 provides that the SBA is a fully integrated agreement "with regard to [Home Depot's] purchase, offer of sale, sale or rental of Merchandise" and *does* supersede all prior agreements "as to the subject matter contained herein."  *Id.*  In other words, the SBA itself contemplates that there may be aspects of the relationship between Home Depot and ESI — not relating to "the subject matter" of the SBA — that are not be covered by the SBA.

[4]     Home Depot's attempt to recast any and all "Goods" it might obtain from ESI as the "subject matter" of the SBA is unpersuasive.  *See* ECF No. 32 ("Def.'s Reply"), at 4-5.  The word "Goods" appears in response to the question "What do you provide?" in a brief section of the Summary of Business Terms about ESI, alongside information like "Person Completing Form" (John Haley) and "Small or Large Business" (Small).  SBA at 1.  That is, it provides "General Information" about ESI, but no details as to what ESI promised to deliver under the contract.  It therefore proves little or nothing about the "subject matter" of the SBA.

Second, Home Depot invokes the language of the forum-selection clause itself. Under the SBA, Home Depot may elect to arbitrate "[a]ny dispute . . . which *arises out of*, *relates to or concerns* this SBA." SBA at 9, § 6.4(b) (emphasis added). If Home Depot opts not to "submit a dispute under [the] SBA to arbitration," then "any civil action to decide such dispute shall be brought in either the US District Court for the Northern District of Georgia, Atlanta Division, or the Fulton Superior Business Court, Georgia." *Id.* at 9, §§ 6.4(b), 6.5. It is true that courts have given broad effect to forum-selection clauses like this one. *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause." (alterations omitted)); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 367 (S.D.N.Y. 2011) ("The term 'related to' is typically defined more broadly [than the phrase 'arising out of'] and is not necessarily tied to the concept of a causal connection." (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)). But the breadth of the clause, without more, does nothing for Home Depot for the same reason that its reliance on the "entire business relationship" language fell short: The Court is unable to determine — from what is basically a contract template provided by Home Depot — whether or not ESI's Manufacturer Agreement claims "arise[] out of, relate[] to or concern[]" the SBA. Home Depot's only arguments to the contrary are conclusory and unpersuasive.[5]

Finally, Home Depot argues that the SBA is the "fundamental document" defining the rights and obligations of the parties and its forum-selection clause should therefore govern

---

[5] Most notable is Home Depot's argument that "ESI's attempt to create a dispute about whether the SBA applies to its claims" is itself "a dispute that 'relates to' the SBA." Def.'s Reply 6. But that argument proves too much. If that were correct, Home Depot could always manufacture a "dispute" about the applicability of the SBA that would then, by itself, bring the dispute with the SBA's forum-selection clause.

6

disputes that arise out of other, related contracts (including the Manufacturer Agreement), even if those other contracts do not include a forum-selection clause. *See* ECF No. 27 ("Def.'s Mem."), at 7-8; Def.'s Reply 2, 6. But the cases Home Depot cites do not for the most part stand for that proposition. *See, e.g.*, *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (holding that a forum-selection clause in one agreement covered disputes arising from interrelated agreements lacking such a clause because, on the facts of the case, those disputes necessarily "concern[ed]" the first agreement and thereby fell explicitly within the clause's scope); *E.P. Henry Corp. v. Home Depot, Inc.*, No. 07-CV-2783, 2008 WL 62283, at *2, 10 (D.N.J. Jan. 3, 2008) (unpublished) (holding that the SBA's forum-selection clause applied to disputes that did, in fact, arise under the SBA). More broadly, Home Depot fails to establish that the Manufacturer Agreement claims "depend on rights and duties that must be analyzed by reference to the [specific] contractual relationship" created by the SBA. *Weingard v. Telepathy, Inc.*, No. 05-CV-2024 (MBM), 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005) (internal quotation marks omitted). ESI alleges that an entirely separate contract is the source of the parties' rights and duties at issue — that is, that while the SBA governed ESI's provision of pre-manufactured goods to Home Depot ("Merchandise"), the alleged Manufacturer Agreement governed ESI's subsequent manufacture and sale to Home Depot of a particular quantity of custom-made mobile phone accessories. On the facts alleged — and the evidence proffered — it cannot be said that ESI's Manufacturer Agreement-related claims "grow out of the . . . relationship" created by the SBA or that "the gist of those claims is a breach of *that* relationship." *Id.* (internal quotation marks omitted) (emphasis added).[6]

---

[6] Home Depot also argues that ESI acknowledged in a pre-litigation demand letter that the SBA governs all of its claims. *See* ECF No. 25-2; Def.'s Mem. 3; Def.'s Reply 5. Putting aside the question of whether the Court may consider such a letter as evidence of the scope of a written

7

In sum, having provided next to no evidence that the subject matter of the SBA encompassed the later-formed manufacturing relationship between the parties defined by the alleged Manufacturer Agreement, Home Depot fails to carry its burden of showing that the "claims . . . involved in the suit" arising from the Manufacturer Agreement "are subject to the [SBA's] forum selection clause." *Martinez*, 740 F.3d at 217. That means that Home Depot's motion with respect to the Manufacturer Agreement claims must be evaluated using the traditional Section 1404(a) factors. *See N.Y. Marine*, 599 F.3d at 112. To show that transfer is warranted under those factors, Home Depot "carries the burden of making out a strong case for transfer." *Id.* at 114 (internal quotation marks omitted). It fails to carry that burden. Substantially for the reasons laid out by ESI, *see* ECF No. 29 ("Pl.'s Opp'n"), at 5-6, the Court finds that the balance of factors weighs against transfer. Home Depot's only argument to the contrary is that courts in its preferred venue are more familiar with Georgia law, which governs the claims here. That is undoubtedly true, but it is unlikely that the black-letter contract law governing the claims in this case differs greatly between New York and Georgia or that the Court will be unable to properly apply Georgia law. *See, e.g.*, *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cty., Wash.*, 675 F. Supp. 2d 354, 372 (S.D.N.Y. 2009) (noting that this factor is "typically given little weight by federal courts" and figures only "slightly" in the determination). The remaining factors are either neutral or weigh in favor of ESI, including the relative means of the parties and, most significantly, the fact that ESI "chose New York as its

---

agreement between the parties, the letter proves less than Home Depot claims. Yes, ESI refers in the letter to an "agreement" with a mediation provision that seems to mirror the SBA's. But the "agreement" appears to differ in key respects from the SBA. For instance, it was executed on a different date from the current version of the SBA, *see* Def.'s Mem. 2 n.1, and it allegedly contains price terms, *see* ECF No. 25-2, at 2, while the SBA does not. So it is not clear that the "agreement" in the letter is the SBA and the Court declines to consider it.

8

forum, a decision that is given great weight where there are no indicia of forum shopping." *City of Perry v. Procter & Gamble Co.*, No. 15-CV-8051 (JMF), 2016 WL 5416508, at *2 (S.D.N.Y. Sept. 28, 2016) (internal quotation marks and citation omitted). Accordingly, the Court denies Home Depot's motion to transfer ESI's claims related to the Manufacturer Agreement.

**B. WG Contracts Claim**

By contrast, Home Depot carries its burden of showing that the SBA governs ESI's fifth claim for relief, which alleges that Home Depot breached the WG Contracts by accepting pre-made, non-custom goods from ESI but did not pay for them. In fact, ESI's Amended Complaint and briefing essentially concede the point. According to ESI, there are two types of goods that it sold to Home Depot: (1) its own prefabricated products and (2) goods that were custom-made for Home Depot. "Prior to the Manufacturer Agreement, ESI had only sold to Home Depot its own 'Wireless Gear' branded products . . . ." Compl. ¶ 15. "[T]he Manufacturer Agreement transitioned ESI's relationship with Home Depot from that of a mere supplier to that of a manufacturer for Home Depot." *Id.* ¶ 16. In differentiating the Manufacturer Agreement from the SBA, ESI explains that "the subject matter of the [SBA] relates to the supply of [prefabricated] goods to Home Depot, not the manufacturing of custom made goods." Pl.'s Opp'n 7. That is, "the SBA is . . . intended to cover the sale of ESI's own products" — presumably encompassing "its own 'Wireless Gear' branded products," Compl. ¶ 15 — "not the Custom Made Products." Pl.'s Opp'n 7. Reading the Amended Complaint and opposition brief together, the only logical conclusion is that any *non*-custom-made products sold to Home Depot — including the products sold pursuant to the WG Contracts — fall within the scope of the SBA.

In response, ESI first protests that "not one of Plaintiff's claims relies upon or cites to the SBA." ECF No. 34 ("Surreply"), at 1. But that *pro forma* objection cannot overcome what ESI

9

itself admits: that claims regarding non-custom goods that it supplied as a "supplier," rather than a manufacturer, are covered by the SBA. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007) ("[W]hen ascertaining the applicability of a contractual provision to particular claims, we examine the substance of those claims, shorn of their labels."). ESI's second objection — that Home Depot waived the argument as to this claim by raising it for the first time in its reply papers — is doubly deficient. The argument was raised, albeit somewhat unclearly, in Home Depot's opening brief, *see* Def.'s Mem. 14, and even if it had not been, the Court would exercise its discretion to consider it anyway, especially since ESI had the opportunity to respond in a surreply. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005). In short, the Court concludes that the WG Contracts claim is "subject to the forum selection clause" in the SBA. *Martinez*, 740 F.3d at 217. Absent exceptional circumstances — and ESI proffers none — that clause must be "given controlling weight." *Atlantic Marine Constr.*, 571 U.S. at 63 (internal quotation marks omitted). Accordingly, the Court grants Home Depot's motion to transfer the WG Contracts claim — and that claim alone — to the United States District Court for the Northern District of Georgia.[7]

## MOTION TO DISMISS

Home Depot also moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of ESI's claims for failure to state a claim. In reviewing that motion, "the Court must accept the factual allegations set forth in the complaint as true and draw all

---

[7] As ESI concedes that this is an appropriate course of action, *see* Surreply 2, the Court need not address its argument that the Court may entertain claims notwithstanding a valid forum-selection clause. It bears mentioning, however, that *Atlantic Marine Construction* instructs district courts to enforce forum-selection clauses "[i]n all but the most unusual cases," 571 U.S. at 66, and "[o]n the whole," courts in circumstances like those here "have been loath to act contrary to the *Atlantic Marine* mandate," *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16-CV-3103 (KPF), 2017 WL 280818, at *15 (S.D.N.Y. Jan. 20, 2017).

reasonable inferences in favor of the plaintiff." *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 319 (S.D.N.Y. 2012) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). The Court will not dismiss any claims unless the plaintiff has failed to plead sufficient facts to state a claim for relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

Without the WG Contracts claim, ESI's remaining claims are (1) breach of the Manufacturer Agreement; (2) promissory estoppel; (3) unjust enrichment; and (4) fraudulent concealment. The Court will address each in turn.

**A.  Breach of the Manufacturer Agreement**

First, ESI plainly states a claim for breach of contract under Georgia law, which applies here. *See* SBA at 12, § 14.7 ("This SBA and any [purchasing order] hereunder and *all disputes arising out of the parties* [sic] *relationship* will be governed by and construed in accordance with the laws of the State of Georgia . . . ." (emphasis added)); *see also, e.g.*, *JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035 (AJN), 2019 WL 3051760, at *2 (S.D.N.Y. July 11, 2019) (giving effect to a choice-of-law provision providing that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto"). "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant

11

damages (3) to the party who has the right to complain about the contract being broken." *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014) (citing *Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). ESI alleges the existence of a valid contract — namely, that in May 2017, Home Depot agreed to purchase custom-made cell phone accessories from ESI. Later, however, Home Depot refused to accept the goods or pay ESI (breach), thereby saddling ESI with $1.8 million in unsalable mobile phone accessories (damages). Compl. ¶¶ 14, 19-20, 32-33. As a party to the alleged contract, ESI clearly has the right to complain of the breach. *See, e.g.*, *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. 2009). Thus, each element has been sufficiently pleaded.

Home Depot's arguments to the contrary rely entirely on provisions of the SBA — for instance, one that purportedly requires ESI to allege the existence of a written purchase order, which Home Depot contends ESI has not done. *See* Def.'s Mem. 10-11; Def.'s Reply 7-8; SBA at 8, 12, §§ 1.2, 1.4, 14.10, 14.13. But all of these theories of non-liability are premised, of course, on the applicability of the SBA to ESI's Manufacturer Agreement claims. As discussed in detail above, the Court is unable on the existing record to conclude that the SBA governs this claim; that the SBA is incorporated by reference into the Amended Complaint, *see* Def.'s Reply 7 n.22; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016); or that any other freestanding ground exists to consider the SBA. Accordingly, ESI states a claim for breach of the Manufacturer Agreement.

**B. Promissory Estoppel**

Next, ESI brings a claim of promissory estoppel — namely, that it reasonably relied, to its detriment, on Home Depot's promise to buy the custom-made mobile phone accessories. Compl. ¶¶ 35-39. To plead promissory estoppel under Georgia law, a plaintiff must allege

"(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right." *Davidson v. Maraj*, 609 F. App'x 994, 1001 (11th Cir. 2015) (summary order) (per curiam) (quoting *Mariner Healthcare, Inc. v. Foster*, 634 S.E.2d 162, 168 (Ga. Ct. App. 2006)); *see* Ga. Code Ann. § 13-3-44.  ESI adequately does so: It alleges that Home Depot promised to purchase custom-made products from ESI; that ESI relied on the promise by manufacturing and importing $1.8 million worth of custom mobile phone accessories; and, on the facts alleged, that an injustice may be avoided only by enforcing Home Depot's promise because ESI materially changed its position based on that promise.  *See* Compl. ¶¶ 17-19, 25.

Home Depot makes two arguments to the contrary.  The first — that ESI does not plausibly allege that Home Depot would reasonably believe its promise would induce reliance on ESI's part because the SBA expressly states that "estimates and forecasts [of demand] are non-binding," Def.'s Mem. 11; *see* SBA at 12, § 14.10 — fails for the now-familiar reason that the Court will not consider the SBA in assessing ESI's claims about the Manufacturer Agreement.[8] The second — that ESI does not adequately plead a promise by Home Depot because it does not cite a "single word spoken or written by Home Depot" that supposedly conveyed a promise, *see* Def.'s Mem. 11; Def.'s Reply 8 — falls short because a promise need only "have been

---

[8]   In any event, ESI adequately alleges that Home Depot should have expected it to rely on the promise, asserting that Home Depot took steps — like requiring ESI to undergo a "costly and time consuming 'on boarding' process" and setting demanding production and quality control deadlines — that would reasonably induce ESI's reliance on the promise.  Compl. ¶¶ 17-19.

communicated with sufficient particularity to enforce the commitment." *Davidson*, 609 F. App'x at 1001 (quoting *Mooney v. Mooney*, 538 S.E.2d 864, 868 (Ga. Ct. App. 2000)). ESI identifies a "sufficient[ly] particular[]" promise to support a claim for estoppel: Home Depot's alleged promise to purchase a certain quantity of custom-made products from ESI. *See* Compl. ¶¶ 1-2, 14, 20. To the extent Home Depot suggests that ESI must quote from certain documents (let alone attach those documents) to adequately plead a promise, that is not the law. *Cf. Innocent v. Wachovia Mortg. Corp.*, No. 1:10-CV-03799-RWS, 2012 WL 602129, at *2 (N.D. Ga. Feb. 22, 2012) (holding, in a breach-of-contract case, that "[a]t the pleading stage . . . a complainant is not required to attach the written agreement or to quote the allegedly breached provision verbatim"). This claim therefore survives.

## C. Unjust Enrichment

By contrast, ESI fails to plead a plausible claim of unjust enrichment. "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Smith Serv. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001). Georgia law is somewhat unclear, but the "benefit conferred" element appears to require some *affirmative* "transfer of some benefit from plaintiff to defendant" for a plaintiff to make out a claim of unjust enrichment. *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 856-57 (11th Cir. 2013) (summary order) (per curiam) (observing that "[n]o Georgia decision is directly on point" on the question of whether "one party saving money at the other party's expense" could constitute a benefit in an unjust enrichment claim, but — after surveying Georgia appellate decisions — noting that an *affirmative* "transfer of some benefit from plaintiff to defendant" is required for a plaintiff to make out a claim of unjust enrichment); *see, e.g.*, *Hollifield v. Monte Vista Biblical Gardens,*

14

*Inc.*, 553 S.E.2d 662, 670 (Ga. Ct. App. 2001) ("For unjust enrichment to apply either in law or equity, the party *conferring the labor and things of value* must act with the expectation that the other will be responsible for the cost." (emphasis added)); *see also, e.g.*, *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1334 (N.D. Ga. 2017) (reading *Tiller* to "require[] that a plaintiff confer a benefit *directly* to the defendant" (emphasis added)).

Here, ESI does not allege that it has directly conferred a benefit on, or rendered a service to, Home Depot that would be unjust for Home Depot to retain. Instead, it alleges that the fact it had already manufactured the products gave Home Depot leverage to negotiate a lower price from a third-party manufacturer — a perfect stranger to the ESI-Home Depot deal. Compl. ¶ 42. But Home Depot accepted no products or services from ESI that it has not paid for. It would be a different matter entirely if (absent a contract) Home Depot had accepted ESI's custom-made products and then refused to pay for them (or refused to pay full value for them). *See Tiller*, 549 F. App'x at 857 (quoting a Georgia statute providing that "when one renders service or transfers property which is valuable to another, which the latter *accepts*, a promise is implied to pay the reasonable value thereof" (emphases omitted)). In that situation, ESI would have conferred a thing of value on Home Depot that would have unjustly enriched the latter. Here, however, it conferred no such direct benefit.[9] In short, because ESI does not adequately allege that it conferred a benefit on Home Depot, its claim for unjust enrichment must be and is dismissed.

---

[9] If anything, the *other* manufacturer arguably has a better claim for unjust enrichment against Home Depot, as Home Depot allegedly *did* accept its products and obtained them at a more favorable price than it otherwise would have. Compl. ¶ 42. Notably, the situation of the other manufacturer is closer to the facts of *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01-CV-2946 (AGS), 2002 WL 432390 (S.D.N.Y. Mar. 20, 2002), upon which ESI relies. In that case, the defendant was able to pay a lower price to *the plaintiff* — not to a third party — by delaying a business acquisition, and it was thereby unjustly enriched. *See id.* at *10.

**D. Fraudulent Concealment**

Finally, ESI's fraudulent concealment claims — that Home Depot fraudulently concealed from it the fact that it had negotiated a similar contract with a separate manufacturer "in order to leverage more favorable pricing" and that it was harmed as a result, Pl.'s Opp'n 18-19; Compl. ¶¶ 45-51 — must be dismissed for two independent reasons. First, ESI's allegations do not satisfy Rule 9 of the Federal Rules of Civil Procedure, which requires that claims of fraud be pleaded "with particularity." Fed. R. Civ. P. 9(b). Contrary to ESI's suggestion, *see* Pl.'s Opp'n 19, fraudulent concealment claims are subject to Rule 9's heightened pleading requirement. *See, e.g.*, *Rogers v. Nacchio*, 241 F. App'x 602, 608-09 (11th Cir. 2007) (summary order) (per curiam) (affirming dismissal of common-law fraudulent concealment claims for failure to satisfy Rule 9); *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018). To comply with the heightened pleading standard of Rule 9, the complaint "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). "Where the claim is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Schneider v. Pearson Educ., Inc.*, No. 12-CV-6392 (JPO), 2013 WL 1386968, at *4 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks omitted). The Amended Complaint here fails to do so; indeed, it does little more than track the elements of a fraudulent concealment claim. Compl. ¶¶ 46-51. Because it is not pleaded with particularity, ESI's claim must be dismissed.

Second, and in any event, ESI does not sufficiently allege, under any pleading standard, that Home Depot owed it a duty to disclose that Home Depot was negotiating with a separate manufacturer in order to lowball ESI.  In Georgia, a duty to disclose may arise from (1) a "confidential" (*i.e.*, fiduciary) relationship between two parties or (2) "the particular circumstances of the case."  Ga. Code Ann. 23-2-53; *see Bogle v. Bragg*, 548 S.E.2d 396, 401 (Ga. Ct. App. 2001).  "Any relationship shall be deemed confidential . . . where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."  Ga. Code Ann. § 23-2-58.  Here, ESI alleges that, "[b]y virtue of being an 'on boarded' manufacturer for Home Depot," Compl. ¶ 46 — "engag[ing] in a costly and time consuming" process that involved "significant time and expense," *id.* ¶¶ 17, 25 — it was subject to Home Depot's "controlling influence."  *Id.* ¶ 46.  But that is little more than a "[t]hreadbare recital[]" of the Georgia law governing the duty to disclose, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 566 U.S. at 678); Ga. Code Ann. 23-2-58, supported by a conclusory assertion that ESI's upfront investments gave Home Depot a "controlling influence" over its conduct.  That does not suffice.  *See, e.g.*, *Barber v. Mortg. Elec. Registration Sys.*, No. 12-CV-00183, 2013 WL 12111188, at *9 (N.D. Ga. Aug. 6, 2013) (dismissing a constructive fraud claim because the plaintiff "fail[ed] to allege that she had any confidential or fiduciary relationship" with the defendants).  In short, ESI's fraudulent concealment claim fails for multiple, independent reasons, and it must be dismissed.

## CONCLUSION

For the reasons stated above, Home Depot's motion to transfer is GRANTED in part and DENIED in part.  Specifically, ESI's fifth claim for relief — for breach of the WG Contracts —

is transferred to the United States District Court for the Northern District of Georgia. The other claims will remain in this Court. Similarly, Home Depot's motion to dismiss the Amended Complaint for failure to state a claim is GRANTED in part and DENIED in part. Specifically, ESI's claims for breach of the Manufacturer Contract and promissory estoppel survive, while its claims for unjust enrichment and fraudulent concealment must be and are dismissed.

That leaves the question of whether ESI should be granted leave to further amend its Amended Complaint. Mindful that "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend," *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) (internal quotation marks omitted), and that there may be additional facts ESI can plead that would, if true, establish a duty to disclose on Home Depot's part, *cf., e.g.*, *Yarbrough v. Kirkland*, 548 S.E.2d 670, 673 (Ga. Ct. App. 2001) ("Because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the issue of whether a confidential relationship has been created is ordinarily reserved for the jury."), the Court exercises its discretion to grant leave to replead the fraudulent concealment claim. By contrast, because the problems with the unjust enrichment claim are substantive, ESI does not suggest that it possesses additional facts that would save the claim, and ESI was previously warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss," ECF No. 17, the Court denies leave to amend the now-dismissed unjust enrichment claim. *See, e.g.*, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *see also, e.g.*, *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming the district court's denial of leave to amend in part because of the previous opportunities that the plaintiff had been granted to amend the complaint).

ESI shall file any amended complaint repleading its claim for fraudulent concealment **within three weeks of this Opinion and Order**. ESI will not be given any further opportunity to amend the complaint to address the issues discussed in this Opinion and Order. If ESI does not file an amended complaint by that deadline, Home Depot shall file an answer to ESI's remaining claims **within five weeks of this Opinion and Order**. If ESI does file an amended complaint, Home Depot shall answer, move to dismiss, or otherwise respond to the amended complaint **within three weeks of the amended complaint being filed**.

The Clerk of Court is directed to open a new action, to assign it to the undersigned's docket, and to transfer that new case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Georgia. The parties shall litigate the WG Contracts claim in that action.[10] Finally, the Clerk of Court is directed to terminate ECF No. 23.

SO ORDERED.

Dated: September 9, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

---

[10] Under 28 U.S.C. § 1404(a), a court can transfer only an entire action, not individual claims. *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618-19 (2d Cir. 1968); 28 U.S.C. § 1404(a). "Where," as here, "certain claims are properly severed, the result is that there are then two or more separate 'actions,' and the district court may . . . transfer certain of such separate actions while retaining jurisdiction of others." *Wyndham Assocs.*, 398 F.2d at 618; *see also Blalock v. Jacobsen*, No. 13-CV-8332 (JMF) (S.D.N.Y. Dec. 30, 2013), ECF No. 8, at 7.